**In the Matters of R.L.H., A.D., and C.L.B., each child alleged to be a delinquent child.**

**No. 71A04–0410–JV–536.**

Court of Appeals of Indiana.

July 26, 2005.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, for Appellant Indiana Family and Social Services Administration, Department of Mental Health and Addiction.

James A. Masters, Nemeth, Feeney & Masters, P.C., South Bend, for Appellee St. Joseph County Probation Department.

Jill Ulrich, St. Joseph County Public Defender, South Bend, for Appellees R.L.H., A.D., and C.L.B.

## OPINION

CRONE, Judge.

### Case Summary

The Indiana Family and Social Services Administration, Department of Mental Health and Addiction ("DMHA") appeals the probate court's orders committing R.L.H., A.D., and C.L.B. to a state mental institution. We reverse.

### Issue

DMHA presents two issues for our review, but we find the dispositive issue to be whether the probate court exceeded its statutory authority by issuing commitment orders for R.L.H., A.D., and C.L.B.

### Facts and Procedural History

#### 1. Facts Regarding A.D.

On January 15, 2002, the State filed a delinquency petition in the St. Joseph Pro-

bate Court.[1] The petition alleged, *inter alia*, that ten-year-old A.D. had committed resisting law enforcement, a class A misdemeanor if committed by an adult. On January 30, 2002, the probate court found A.D. to be a delinquent child. On February 12, 2002, the probate court ordered that A.D. be placed in Oaklawn Residential Hospital, a private child caring facility. On February 18 and August 19, 2003, the probate court ordered that A.D. remain at Oaklawn. On December 22, 2003, the probate court committed A.D. to the St. Joseph County Juvenile Justice Center ("Juvenile Justice Center") for thirty days. On January 26, 2004, the probate court ordered an evaluation of A.D.'s need for mental health treatment. On February 19, 2004, the probate court ordered placement of A.D. at Larue D. Carter Memorial Hospital ("Larue Carter"). On March 17, 2004, A.D. was admitted to Larue Carter. At a status hearing on April 29, 2004, A.D.'s probation officer testified that Larue Carter had notified him that discharge planning for A.D. was scheduled to begin the next day. At the hearing, the probate court stated, "I am looking forward to receiving the recommendation for that [discharge] plan. Certainly, before I'm going to allow any modification or change in [A.D.'s] status this Court has to be convinced that it is truly in his best interest." Appellant's App. at 90.[2]

On June 1, 2004, DMHA filed a motion to intervene and a motion to correct error. The St. Joseph County juvenile probation department filed a response in opposition to motion to correct error on June 18, 2004. The probate court granted DMHA's motion to intervene on June 17, 2004. Following a hearing, the probate court denied the motion to correct error on August 9, 2004. DMHA filed a notice of appeal with this Court on September 7, 2004.

### 2. Facts Regarding R.L.H.

On September 15, 2003, the State filed a delinquency petition in the probate court, claiming that R.L.H., age twelve, had committed burglary, a class B felony if committed by an adult. On September 29, 2003, the probate court found R.L.H. to be a delinquent child and placed him on electronic home monitoring. On October 31, 2003, the court ordered that R.L.H. be detained at the Juvenile Justice Center and that he participate in a diagnostic evaluation. On November 10, 2003, the court ordered a psychiatric evaluation. On December 1, 2003, the probate court ordered R.L.H. to be placed in Oaklawn Residential Hospital. On March 12, 2004, the probate court issued an order committing R.L.H. to the Juvenile Justice Center for ten days. On March 22, 2004, the probate court found that no person or facility was available to provide R.L.H. with the services he needed and issued an order stating that R.L.H. "is an appropriate candidate for placement in a private child caring facility, i.e. Indiana Department of Mental Health." *Id.* at 148.

1. As discussed in more detail below, the St. Joseph Probate Court has exclusive juvenile jurisdiction in St. Joseph County.

2. DMHA alleges in its brief that A.D.'s admission to Larue Carter was voluntary, with "no court involvement," and that, accordingly, the probate court should not have involved itself in the hospital's plans regarding A.D.'s discharge. Appellant's Br. at 12. However, the record supports Appellees' claim that the probate court ordered A.D.'s commitment on February 19, 2004. The probate court's disposition order on a modification of probation states: "Juvenile is ordered placed at Larue Carter State Hospital and the State Mental Health Department is responsible for payment of placement." Appellant's App. at 56–57. DMHA failed to submit any evidence showing that the commitment was in fact voluntary. Therefore, we will treat A.D.'s commitment as involuntary in our review.

At an April 29, 2004 status hearing, R.L.H.'s probation officer testified that R.L.H. had been in detention since March 22, 2004, and that he was third on the waiting list to be admitted to Larue Carter. Because the detention center had documented many incidents involving R.L.H., including his attempts to escape and to harm himself and others, the probation officer testified that "it would be in [R.L.H.]'s best interest to get to the State Hospital immediately." *Id.* at 157. A representative of Larue Carter testified that all forty-two beds at the hospital were full and that the facility could therefore not accept R.L.H. as a patient at that time. In response, the probate court stated,

> I can only tell you that this Court is going to order you to take this child immediately. You figure out how you are going to do it but, I think this is an absolutely terrible situation that you are placing us in by refusing to take this child. This Court tries to·do what is in the best interest of children. I think there is no question that it is in the best interest of this child to be admitted into your facility and not to be languishing here in detention and waiting for a slot to open up.

*Id.* at 164.

By order of the probate court, R.L.H. was transported to Larue Carter on May 3, 2004. On June 1, 2004, DMHA filed a motion to intervene and a motion to correct error. The St. Joseph County juvenile probation department filed a response in opposition to motion to correct error on June 18, 2004. The court granted the motion to intervene on June 17, 2004. Following a hearing on the matter, the court denied the motion to correct error on Au-

gust 9, 2004. DMHA filed a notice of appeal with this Court on September 7, 2004.

### 3. Facts Regarding C.L.B.

On May 5, 2003, the State filed a delinquency petition with the probate court, claiming that sixteen-year-old C.L.B. committed battery, a class A misdemeanor if committed by an adult. On May 23, 2003, the probate court found C.L.B. to be a delinquent child and released him from detention to the Madison Center for Children. On May 30, 2003, the court ordered him to return to detention at the Juvenile Justice Center. On July 15, 2003, the court released C.L.B. to the custody of his mother and imposed rules of probation. On October 15, 2003, C.L.B. was placed in detention. On October 23, 2003, the probate court ordered that C.L.B. be placed in secure custody at the Madison Center for an evaluation of his need for mental health treatment. On February 6, 2004, the court ordered that C.L.B. be placed in a private child caring facility and successfully complete treatment there. On May 6, 2004, the court released C.L.B. from the Madison Center to the custody of his mother. Following C.L.B.'s release, C.L.B.'s probation officer attempted to get him admitted to Larue Carter, but the hospital denied him admission because they had concerns about his educational needs and his aggressive behavior. On August 3, 2004, the court found C.L.B.'s mother in contempt of court for failing to pay C.L.B.'s probation fees. On the same date, the court found that C.L.B. "is an appropriate candidate for placement in a private child caring facility, i.e. Indiana Division of Mental Health, State Hospital."[3] Appellant's App. at 195. C.L.B.'s

---

**3.** Appellees argue that DMHA's appeal on behalf of C.L.B. is moot because he turned eighteen on August 4, 2004, one day after the probate court ordered his placement at Larue

Carter. Appellee St. Joseph County juvenile probation department states that C.L.B. never entered Larue Carter because of his age and rather was placed in the Madison Center to

mother was released from jail on August 12, 2004, after she paid the probation fees.

On September 2, 2004, DMHA filed a motion to intervene and a motion to correct error. The juvenile probation department filed a response in opposition to motion to correct error. The court granted the motion to intervene on September 17, 2004. Because the probate court did not rule on the motion to correct error, the motion was deemed denied on October 18, 2004.[4] DMHA filed a notice of appeal with this Court on October 28, 2004.

### 4. Consolidation of Appeals

On November 24, 2004, DMHA filed a motion to consolidate the appeals of A.D., R.L.H., and C.L.B. On January 3, 2005, this Court granted DMHA's motion, finding that consolidation was appropriate because the same legal issues would be raised in each of these appeals and that the essential facts of each case were similar. This consolidated appeal ensued.

### Discussion and Decision

 DMHA contends that the probate court exceeded its statutory authority when it ordered A.D., R.L.H., and C.L.B. to be committed to Larue Carter. When the facts are not in dispute and an appeal presents only questions of law, we owe no deference to a trial court's determination.

*In re Paternity of S.J.S.*, 818 N.E.2d 104, 109 (Ind.Ct.App.2004). We evaluate such questions de novo. *Id.*

Appellees—the St. Joseph County juvenile probation department and the three juveniles themselves—make much of the fact that the St. Joseph Probate Court is the only probate court in the state of Indiana that also has exclusive juvenile jurisdiction. *See* Ind.Code § 33–31–1–9(b). While we acknowledge that this court's dual jurisdiction is unique, we do not agree that it provides the court with unlimited authority over the juveniles appearing before it. Like every other Indiana court, the St. Joseph Probate Court must operate within the bounds of statutory authority.[5]

Appellees rely upon one case to support their argument that the juvenile court did not exceed its statutory authority. *See In the Matter of K.G., D.G., D.C.B., and J.J.S.*, 808 N.E.2d 631 (Ind.2004). In that case, the State had filed delinquency petitions against four juveniles. Counsel for each of the juveniles filed motions seeking to determine their competence to stand trial. The juvenile court proceeded under the adult competency statute, which sets forth specific procedures for determining whether an adult defendant "lacks the ability to understand the proceedings and as-

await admission to an adult mental health hospital operated by the state of Indiana. As DMHA points out, however, Indiana Code Section 31–30–2–1 provides that the juvenile court has jurisdiction over a delinquent child until the child reaches the age of twenty-one. Further, because the record does not indicate otherwise, we conclude that C.L.B.'s return to the Madison Center and his pending placement in a state hospital for adults resulted from the probate court's order. We agree with DMHA that the appeal of C.L.B.'s commitment order is therefore not moot.

4. Indiana Trial Rule 53.3(A) states in pertinent part: "In the event a court fails for forty-five (45) days to set a Motion to Correct Error

for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied."

5. We note that the probate court did not cite any statutory authority in its written orders to commit A.D., R.L.H., and C.L.B. to Larue Carter. The parties have correctly identified the possible sources of authority as Indiana Code Sections 31–32–12–1, 12–26–6–1 *et seq.*, 12–26–7–1 *et seq.*, and 12–26–8–1 *et seq.* Accordingly, our analysis will focus on those statutes.

sist in the preparation of his defense." Ind.Code § 35–36–3–1. The statute provides that if the court finds the adult defendant incompetent, "it shall delay or continue the trial and order the defendant committed to the division of mental health and addiction, to be confined by the division in an appropriate psychiatric institution." *Id.* In *K.G.*, the juvenile court, after following the adult competency procedures such as appointing mental health care professionals to examine the juveniles and holding a hearing in each case, entered orders finding that each of the juveniles was incompetent. *In re K.G.*, 808 N.E.2d at 634. Pursuant to the terms of the adult competency statute, the court ordered them committed to DMHA for confinement in an appropriate psychiatric institution. *Id.*

Our supreme court found that the juvenile court erred in relying upon the adult competency statute for guidance in how to determine the four juveniles' incompetence and for authority to commit them to a DMHA psychiatric institution. *Id.* at 638. Our supreme court cited Indiana Code Section 31–32–12–1, which allows for the "examination and treatment of children" under certain circumstances. Specifically, the Court found that

> [a]lthough [Indiana Code Section 31–32–12–1(3)] does not specifically mention "competency," given a juvenile court's flexibility in addressing the needs of children and acting in their best interest, we conclude that this statute allows for the examination and/or treatment of a child *after a delinquency petition has been filed* in order to determine the child's competency.

*Id.* at 639 (emphasis added).

Appellees rely entirely upon *K.G.* to support their position that it was within the probate court's authority to order the commitment of A.D., R.L.H., and C.L.B. Appellees fail to recognize one important distinction, however, that makes our supreme court's holding inapplicable here. *K.G.* addressed Indiana Code Section 31–32–12–1(3), which applies only to situations where "the court has authorized the filing of a petition alleging that a child is a delinquent child or a child in need of services." Here, A.D., R.L.H., and C.L.B. had already been adjudicated delinquent children when the probate court committed them to Larue Carter. Therefore, the probate court would have been required to operate under the authority of Indiana Code Section 31–32–12–1(4), which states that in the case of a child already found to be delinquent, "the court may order examinations and treatment under ... IC 31–37–19." Indiana Code Sections 31–37–19–5 and –6 specify the actions a juvenile court may take on behalf of a child found delinquent under Indiana Code Chapter 31–37–1,[6] including, for example, ordering any of the following: outpatient treatment at a psychiatric facility, confinement in a juvenile detention facility, placement in another home or shelter care facility, and placement in a secure private facility for children.

Clearly, a juvenile court operating under the authority of these statutes may order psychiatric treatment only on an outpatient basis. As shown above, the statute permits various placement options, but a DMHA psychiatric hospital such as Larue Carter does not fall within the statutory definitions of "juvenile detention facility," "shelter care facility," or "secure private

---

6. A.D., R.L.H., and C.L.B. were each found delinquent under Indiana Code Chapter 31–37–1, for committing "an act that would be an offense if committed by an adult." *See* Ind.Code § 31–37–1–2.

facility." [7] In sum, the probate court was not authorized by Indiana Code Section 31–32–12–1 to commit A.D., R.L.H., and C.L.B. to Larue Carter.[8]

■ Article 12–26 of the Indiana Code, which sets out the law regarding temporary and regular commitment of an individual and commitment of a child, is the other possible source of authority for the probate court's commitment orders in this case. The Indiana Code Section 31–37–18–3 states: "If it appears to the juvenile court that a child is mentally ill, the court may: (1) refer the matter to the court having probate jurisdiction for civil commitment proceedings under IC 12–26; or (2) initiate a civil commitment proceeding under IC 12–26." DMHA contends that the probate court in this case failed to follow the required procedures under Article 12–26 and thus overstepped its authority. We agree.

As discussed above, the juvenile court and the probate court in St. Joseph County are one and the same. Therefore, in either capacity, the court here was required to follow the statutory requirements for commitment under Article 12–26 of the Indiana Code. Acting under its juvenile jurisdiction, the probate court had the limited authority to commit or place a child in a "child caring institution." *See* Ind. Code § 12–26–1–4. A "child caring institution" is a residential facility that provides mental health services and operates under a license issued by the Indiana Division of Family and Children. *See* Ind. Code § 12–7–2–29. Larue Carter is operated under the authority of DMHA and is therefore not a child caring institution. *See* Ind.Code § 12–24–1–3. Clearly, then, the probate court did not have authority under this section to commit A.D., R.L.H., and C.L.B.

Article 12–26 also outlines the requirements for commitment of an individual. Temporary commitment may be ordered for a period of up to ninety days, and regular commitment is "reasonably expected" to last longer than ninety days. *See*

---

7. A juvenile detention facility is a secure facility that is only used for the lawful custody and treatment of juveniles and is licensed by the Indiana Department of Correction. Ind.Code § 31–31–8–2. A shelter care facility is a place of residence that is licensed under the laws of any state and is not locked to prevent a child's departure unless the administrator determines that locking is necessary to protect the child's health. Ind.Code § 31–9–2–117. A secure private facility located within the state of Indiana is a facility licensed by the Indiana Family and Social Services Administration, Division of Family and Children. Ind.Code § 31–9–2–115.

8. In *K.G.*, our supreme court seems to say that Indiana Code Section 31–32–12–1, on its own, gives a juvenile court authority to commit an incompetent child to a DMHA facility prior to adjudication of delinquency. Specifically, the Court stated,

> This is not to say that a juvenile court is prohibited from entering an order commit-

ting a child found to be incompetent to an appropriate facility operated by the department of mental health. We merely hold that the adult competency statute is not the proper vehicle to accomplish this end. Rather we believe Indiana Code Section 31–32–12–1 is sufficient to the task.

*K.G.*, 808 N.E.2d at 638. The juvenile court's authority under Section 31–32–12–1 is clearly limited by Section 31–32–12–2, which provides:

> (a) The juvenile court may order temporary confinement for not more than fourteen (14) days, excluding Saturdays, Sundays, and legal holidays, to complete the mental or physical examination of a child.
>
> (b) This section does not authorize a commitment under 12–26.

Though the commitment of a child to a DMHA facility prior to his or her adjudication as a delinquent is not at issue here, we take this opportunity to note that such a commitment—if it lasts longer than fourteen days—would also be inappropriate under Section 31–32–12–1 and –2.

Ind.Code §§ 12–26–6–1 and 12–26–7–1. In the cases of A.D., R.L.H., and C.L.B., the probate court ordered each of them to be placed at Larue Carter, with no indication that the commitment was limited to a period of ninety days.[9] Thus, the requirements for regular commitment apply here. *See* Ind.Code §§ 12–26–7–1 *et seq.* First, a regular commitment proceeding begins with the filing of a written petition, which must include a physician's written statement that he or she believes that the individual is (1) mentally ill and either dangerous or gravely disabled; and (2) in need of custody, care, or treatment in a facility for a period expected to be more than ninety days. Ind.Code § 12–26–7–3(a)(2). If the commitment is to a state institution administered by DMHA, such as Larue Carter, the record must include a report from a community mental health center stating that the center has evaluated the individual and that commitment to such an institution is appropriate. Ind. Code § 12–26–7–3(b). The court is also required to hold a hearing before ordering the regular commitment of an individual. Ind.Code § 12–26–7–4.

Indiana law imposes other requirements upon a court when it orders the commit-ment of a child. *See* Ind.Code §§ 12–26–8–1 *et seq.* The court must appoint a special advocate, a guardian ad litem, or both, before it begins a commitment proceeding. Ind.Code § 12–26–8–1. The advocate must periodically visit the facility where the child is committed, evaluate the services provided to the child, and evaluate whether the commitment continues to be appropriate for the child. Ind.Code § 12–26–8–4. The advocate is required to submit written reports of these reviews to the court, the superintendent of the facility to which the child is committed, the county office that has wardship of the child, and each party to the proceeding. Ind.Code § 12–26–8–5. Finally, the court must require the county office or the probation department to periodically report to the court on the progress made in implementing the commitment. Ind.Code § 12–26–8–9.

The record indicates that most of the procedures set forth in Indiana Code Chapters 12–26–7 or 12–26–8 were not followed by the probate court with regard to its commitments of A.D., R.L.H., and C.L.B.[10] Appellees argue that the probate court was not bound by the statutes discussed above because "the code affords

---

9. The juvenile court's disposition order of February 19, 2004, states in pertinent part, "[A.D.] is ordered placed at Larue Carter State Hospital." Appellant's App. at 57. Regarding R.L.H. and C.L.B., the court's disposition orders of March 22, 2004, and August 3, 2004, contain the exact same language: "The Probation Department has recommended, and the Court concludes, that said child is an appropriate candidate for placement in a private child caring facility, i.e. Indiana Department of Mental Health. The juvenile is to participate and successfully complete treatment." *Id.* at 148, 196. When the court found that R.L.H. was still on the waiting list for admission to Larue Carter Hospital, it ordered the facility to "admit this juvenile immediately as previously ordered on March 22, 2004." *Id.* at 111.

10. It appears that the probate court at least attempted to follow some of the regular commitment procedures discussed above. For example, it ordered mental health evaluations of the juveniles, as required by Indiana Code Section 12–26–7–3(b), but the record contains no written reports of these evaluations, as is also required by that section. Also, the probate court, presumably following the requirement in Section 12–26–7–4, held a hearing before committing each of the juveniles. However, there is no evidence that any of the hearings were prompted, as they should have been, by the receipt of a written petition filed with the court under Section 12–26–7–3.

juvenile courts a degree of discretion and flexibility, unparalleled in the criminal code, to address the needs of children and to act in their best interests." *In re K.G.*, 808 N.E.2d at 637. Such discretion and flexibility does not extend, however, to stepping outside the clear boundaries defined by our legislature. Even if the probate court was attempting to act in the "best interests" of A.D., R.L.H., and C.L.B., it exceeded its statutory authority by ignoring the commitment procedures that are clearly set forth in the Indiana Code.[11]

Reversed.

DARDEN, J., concurs.

MATHIAS, J., concurs with opinion.

MATHIAS, Judge, concurring.

I write to emphasize the understandable exasperation every trial judge feels when confronted with a wait of several months to admit a juvenile in desperate need of psychiatric services to Larue D. Carter Hospital. Insult is added to this injury when, at the end of that wait, a Carter representative informs the court that no bed is yet available.

The trial judge's experience in this case is repeated on an almost daily basis in a courtroom somewhere in Indiana. It is an extremely sad reminder of the real, human cost of prioritization of limited budget resources.

Larue D. Carter Hospital is one of only three state hospitals able to meet the psychiatric needs of children less than 13 years of age and adolescents aged 13 to 18, whose families cannot afford private hospitalization. The other two state hospitals are the Richmond State Hospital and the Evansville Psychiatric Children's Center. Carter has 42 beds available to children and adolescents. Richmond has 20 beds, available only to male adolescents. Evansville has 28 beds available only to children.

---

11. DMHA also argues that the probate court violated the separation of powers doctrine set forth in Article 9, Section 1 of the Indiana Constitution. DMHA contends that the court infringed upon legislative powers when it ordered Larue Carter to admit R.L.H. immediately, despite the hospital's claim of inadequate space and resources, and when it ordered C.L.B. committed to Larue Carter, despite the hospital's concerns that such a placement would be inappropriate because of C.L.B.'s age, educational needs, and aggressive behavior. Because we reverse the probate court's commitment orders on other grounds, we need not reach this issue. *See Daugherty v. Allen*, 729 N.E.2d 228, 233 (Ind. Ct.App.2000) (doctrine of judicial restraint precludes gratuitous review of constitutional questions). As this Court has stated in the past, however, the separation of powers doctrine significantly limits any court's authority to dictate to DMHA which children it will admit to its facilities and when it will admit them. *See Logansport State Hosp. v. W.S.*, 655 N.E.2d 588 (Ind.Ct.App.1995) (finding that trial court's attempt to increase availability of mental health services by ordering state institution to hire sixty new staff members violated separation of powers doctrine because only General Assembly has authority to control expenditures by state facilities); *see also In re Commitment of A.N.B.*, 614 N.E.2d 563 (Ind.Ct.App.1993) (holding that trial court's order forcing DMHA to assume financial responsibility for mentally ill juvenile if Larue Carter refused her immediate placement was improper attempt to "hurdle" the problems of "bureaucratic red tape and inadequate legislative funding", and noting that a facility such as Larue Carter is permitted by statute to deny admission to an individual because of inadequate space and/or resources; *Cf. Y.A. Fleener v. Bayh*, 657 N.E.2d 410 (Ind.Ct.App.1995), *trans. denied* (finding that mentally ill children have no constitutional right to receive residential placements, that "the statutes describing services to be provided by [DMHA] reflect a conscious effort to limit services to those available under existing appropriations," and that only Indiana's legislature has the power to increase availability of inpatient mental health services by increasing funding).

Between these three hospitals, only 90 beds are available to serve the uninsured and indigent psychiatric needs of the more than 1,000,000 juveniles in Indiana. It doesn't require higher math or an expert's training to know that these resources are woefully inadequate to the task.

So, the trial judge in this case did what Indiana's trial judges are often called upon to do: attempt to meet critical human needs by stretching resources, cajoling providers and making referrals to less-than-optimal, temporary alternatives, all while they wait for a bed to open for a hurting child. Against this background, the trial judge's actions were understandable but not within his jurisdiction.