

I N T H E

# Court of Appeals of Indiana

In the Matter of J.N. (Minor Child),

*Child in Need of Services*

and

L.W. (Mother),

*Appellant-Respondent*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

and

Kids' Voice of Indiana,

*Appellee-Guardian Ad Litem*



FILED

Aug 18 2025, 9:22 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

---

August 18, 2025

Court of Appeals Case No.
25A-JC-657

Appeal from the Marion Superior Court

The Honorable Melanie Kendrick, Judge

The Honorable Eleanor K. Finnell, Senior Judge

Trial Court Cause No.
49D22-2408-JC-7707

**Opinion by Judge Mathias**
Judges May and Bradford concur.

**Mathias, Judge.**

[1] The Marion Superior Court adjudicated J.N. a Child in Need of Services ("CHINS"), and L.W. ("Mother") appeals the adjudication raising two issues. First, Mother argues that her due process rights were violated because the court did not comply with the statutory deadlines for holding the fact-finding hearing. Second, Mother argues that she was denied the effective assistance of counsel because her attorney did not object to the fact-finding hearing being set beyond the 120-day statutory deadline.

[2] We affirm.

## Facts and Procedural History

[3] Mother gave birth to J.N. in April 2016.[1] Mother and J.N.'s father ("Father") have a history of domestic violence, which violence has often occurred in J.N.'s presence. On April 21, 2024, Mother and eight-year-old J.N. spent the night at

---

[1] J.N.'s father admitted that J.N. is a CHINS and does not participate in this appeal.

Father's house. The next morning, Mother and Father argued, and the argument escalated into a physical altercation. Mother later stated that Father assaulted her, but Father stated that he was simply restraining Mother because she was trying to attack him. Following the altercation, Mother called the police, and then she and J.N. left the house.

[4] Mother and J.N. were sitting in Mother's car waiting for the police to arrive when Father exited the home and approached the vehicle. Mother proceeded to drive her car toward Father, and she struck him. Mother left the scene, but she returned later that day. Father called the police, and, when the police arrived at his residence, Father told them that Mother had hit him with her car. Mother was arrested, and Mother's boyfriend returned J.N. to Father's house. The State filed criminal charges against Mother, and the criminal court issued a no contact order prohibiting Mother from having contact with J.N. and Father.

[5] On August 7, the Department of Child Services ("DCS") filed a petition to adjudicate J.N. a CHINS because of the history of domestic violence between Mother and Father; because J.N. reported that she did not feel safe in Mother's care; and because Mother expressed her intention to pick J.N. up from school even though the no contact order prohibited contact with J.N. At the initial hearing, Mother and Father denied the allegations in the CHINS petition, and the court ordered J.N. placed in Father's care. Shortly thereafter, the criminal court dismissed the charges against Mother and lifted the no contact order.

[6] The trial court held a pre-trial conference on August 27, and, at that hearing, Mother waived the 60-day time requirement to hold a fact-finding hearing. Appellant's App. Vol. 2, p. 53. Mother and Father then participated in mediation with DCS, but the parties were unable to resolve the CHINS case.

[7] At the scheduled December 3 fact-finding hearing, DCS requested a bifurcated hearing because one of their witnesses was unavailable. Mother did not object to DCS's request. The trial court found good cause to continue the hearing beyond the 120-day requirement because the presiding senior judge would not be available to preside over the proposed second day of the fact-finding hearing. The trial court concluded that it was best for the same judge to hear all of the evidence presented at the fact-finding hearing. Again, Mother did not object.

[8] The court held the CHINS fact-finding hearing on December 17, 133 days after DCS had filed the CHINS petition. At the start of the hearing, Mother requested that the court dismiss the CHINS petition because the fact-finding hearing was being held outside the 120-day deadline and her due process rights had been violated. Tr. Vol. 2, p. 13. The court denied Mother's motion to dismiss and proceeded to hold the fact-finding hearing. During the hearing, Father admitted that J.N. was a CHINS. *Id*. at 16.

[9] Mother's living situation lacked stability on the date of the hearing. She was living with her boyfriend, who had kicked Mother out of his home more than once. Father claimed that Mother's boyfriend abused her, but Mother denied abuse. Mother had sent threatening messages to Father in the months leading

up to the fact-finding hearing. And Father testified that Mother's violent behavior had been ongoing for several years. *Id*. at 28-31.

[10] The family case manager did not believe that Mother had the ability to safely parent J.N. because of Mother's emotional instability and Mother's refusal to participate in domestic violence services. *Id.* at 54-55. The case manager expressed concern that if Mother failed to address her domestic violence issues and inability to control herself when she is upset, J.N. would be endangered. *Id.* at 55-56. The guardian ad litem ("GAL") informed the court that J.N. was not ready for unsupervised parenting time with Mother but wanted to increase their supervised visits. *Id.* at 84-85, 87. The GAL also believed that increased visitation between Mother and J.N. was appropriate, but that it should continue to be supervised. *Id.* at 88.

[11] The court adjudicated J.N. a CHINS because of the "extensive history of domestic violence" between Mother and Father and Mother's refusal to participate in domestic violence services. Appellant's App. Vol. 2, p. 86. The court concluded that J.N. is endangered because she lacks a safe and stable home free from exposure to domestic violence and that the coercive intervention of the court is necessary because Mother "has refused to participate in services to address safety concerns." *Id.*

[12] Mother now appeals.

## Standard of Review

[13] Our Supreme Court recently reiterated the purposes and goals of CHINS proceedings:

> Indiana's juvenile law is founded on the *parens patriae* power of the State and the courts to "step into the shoes" of parents, guardians, or custodians when necessary to safeguard a child's best interests. *In re K.G.*, 808 N.E.2d 631, 635-36 (Ind. 2004). CHINS law in particular is focused on serving "families in crisis" by getting children the help that parents are not "willing or able to provide." [*In re*] *S.D.*, 2 N.E.3d [1283,] 1285 [Ind. 2014]. Thus, in CHINS proceedings, the courts' focus is on protecting children, not punishing parents. *Id*. Indeed, the courts and DCS must make "all decisions . . . in consideration of the best interests of the child or children concerned," I.C. § 31-10-2-2(2), with ensuring a child's safety "the most important consideration," I.C. § 31-10-2-1.5.[ ]
>
> To advance a child's best interests during CHINS proceedings, our trial courts are vested with "broad discretion." *K.G.*, 808 N.E.2d at 636. But this discretion is not unbounded. Courts must uphold the parties' "due process rights" and "take into account recommendations and input" from DCS, parents, children, and others. *In re K.D.*, 962 N.E.2d 1249, 1255 (Ind. 2012). And to guard against "unwarranted State interference in family life," courts can only adjudicate a child as needing services when all the substantive requirements of the applicable CHINS statute are satisfied. *See S.D.*, 2 N.E.3d at 1287. In this way, the State's "'coercive intervention' into family life"—and the potentially long-lasting collateral consequences of a CHINS adjudication—are reserved for families that cannot meet their children's needs "without coercion." *Id*. at 1285.

*Matter of E.K.*, ---N.E.3d ---, 2025 WL 1711025, at *5 (Ind. June 19, 2025).

## Indiana Code Section 31-34-11-1

[14] Indiana Code section 31-34-11-1 provides that a CHINS fact-finding hearing shall be held not more than sixty days after the petition is filed, or, if all parties consent to additional time, not more than 120 days after DCS files the petition. In this case, the parties waived the sixty-day requirement;[2] therefore, pursuant to section 31-34-11-1, the juvenile court was statutorily required to hold the fact-finding hearing within the 120-day deadline.

[15] However, section 31-34-11-1 conflicts with Indiana Trial Rule 53.5,[3] which provides in relevant part: "[u]pon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence." In *In re M.S.*, 140 N.E.3d 279, 284 (Ind. 2020), our Supreme Court held that, under Trial Rule 53.5, a juvenile court can exceed the 120-day deadline imposed by Indiana Code section 31-34-11-1(b) if a party (1) moves for a continuance and (2) shows "good cause" for why a continuance is necessary. The Court explained its reasoning as follows:

---

[2] Mother acknowledges that she and Father waived the sixty-day deadline to hold the CHINS fact-finding hearing. However, she claims that the court did not obtain the consent of all parties, including J.N., the GAL, and DCS, and therefore, the trial court was allowed to set the fact-finding hearing beyond the sixty-day deadline only if the continuance was supported by good cause. And the court did not find good cause pursuant to Trial Rule 53.3 to extend the fact-finding hearing beyond the sixty-day deadline. Mother claims that the trial court's failure to comply with the statute and Rule 53.3 violated her due process rights. We do not agree. Mother's waiver of the 60-day deadline precludes her from arguing that her due process rights were violated when the fact-finding hearing was continued beyond the 60-day statutory time limit.

[3] Trial Rule 53.5 was repealed effective January 1, 2025. Motions to continue are now addressed in Trial Rule 7.

> Allowing a "good cause" continuance beyond the 120-day deadline not only provides fairness for the parties involved but also allows the legislature's intent to "prevail[ ] over the strict literal meaning of any word or term." We have consistently observed the principle that "the purpose of a CHINS adjudication is to protect children, not punish parents." Accordingly, trial courts are afforded considerable discretion in ruling on motions for continuances, including determining whether the moving parties have shown good cause for requesting a continuance. There are no "mechanical tests" for determining whether a request for a continuance was made for good cause. Rather, the decision to grant or deny a continuance turns on the circumstances present in a particular case . . . .

*Id*. at 284-85 (citations omitted); *see also In re K.W.*, 178 N.E.3d 1199, 1208 (Ind. Ct. App. 2021).

[16] Mother claims that the trial court abused its discretion when it held the fact-finding hearing outside the 120-day statutory deadline because "the record does not support" the trial court's "good cause finding."[4] Appellant's Br. at 16. Mother directs our attention to this court's holding in *Matter of M.H.*, 244 N.E.3d 966, 971-72 (Ind. Ct. App. 2024), that a "juvenile court's desire for

---

[4] To the extent Mother argues that Trial Rule 53.5 is inapplicable because neither party requested a continuance, we disagree. *See Matter of K.T.*, 188 N.E.3d 479, 480-482 (Ind. Ct. App. 2022) (holding that, while Ind. Code § 31-34-11-1 required the trial court to hold the CHINS fact-finding hearing within 120 days of the petition, the court had good cause to continue the hearing on its own motion under Ind. Trial Rule 53.5).

Mother also argues that DCS did not present evidence that its witness was out of the country and was not available on December 3 but simply made a vague assertion without naming the witness or explaining why the witness was essential to the proceedings. Appellant's Br. at 15. The trial court accepted DCS's statement that its witness was unavailable as fact, and Mother did not raise an objection. Moreover, because DCS asked for bifurcation, and the trial sua sponte continued the fact-finding hearing in its entirety, DCS was not bound by the requirements listed in former Trial Rule 53.5 for establishing the unavailability of a witness.

judicial economy, without more, does not outweigh" the State's interest in protecting children but also guarding against unnecessary State interference into family life, "especially when the desired judicial economy is based upon less than concrete or known savings."[5] In that case, we concluded that the trial court did not have good cause to continue the fact-finding hearing over the mother's objection where the trial court desired to wait until the child's father had been located so that it could "address all matters at the same time[.]" *Id.* at 968, 972.

[17] Here, on December 3, 2024, Mother was prepared to proceed with a fact-finding hearing on the CHINS petition. DCS requested that the court bifurcate the hearing because DCS had one witness who was unavailable to testify. DCS told the court that the witness would return to the United States the week of December 16. Tr. Vol. 2, p. 8. The trial court suggested continuing the fact-finding hearing until all witnesses were available. *Id.* No party objected to continuing the hearing. The court found good cause to continue the fact-finding hearing because the judge presiding on December 3 was not available the week of December 16, and for that reason, bifurcation was not "going to be the best resolution" given the importance of having the same judge hear all the evidence. *Id.* at 9.

---

[5] *M.H.* addressed the application of the Trial Rule 53.3 "good cause" exception to the 60-day statutory time limit. *See In re K.W.* 178 N.E.3d 1199, 1208 (Ind. Ct. App. 2021).

[18] On December 17, 133 days after DCS filed the CHINS petition, the parties appeared for fact-finding. At the start of the hearing, Father requested a temporary order granting him primary custody of the child.[6] Father explained that a custody hearing was scheduled for the end of January. Mother's attorney declined to respond to Father's request because he did not represent Mother in the custody proceedings. The court explained Father's motion to Mother and she responded, in part, "[w]e're already past the 120-day allotted time frame that DCS has to hold a fact-finding hearing, which is kind of violating my due process rights right now. So personally, I object." *Id.* at 13. Mother also requested "dismissal of this CHINS case[.]" *Id.* The court decided to proceed with the fact-finding hearing implicitly denying Mother's and Father's requests.

[19] DCS's argument that Mother has waived this issue is well-taken because Mother did not request dismissal of the fact-finding hearing prior to commencement of the hearing. But we elect to address the merits of Mother's argument and conclude that the trial court acted within its discretion when it sua sponte continued the fact-finding hearing for good cause. And, on those merits, we agree with the trial court's assessment that one judicial officer should preside over a CHINS fact-finding hearing.[7]

---

[6] DCS placed J.N. in Father's care, where she has remained throughout the CHINS proceedings.

[7] This is the distinguishing fact between *M.H.*, 244 N.E. at 972, where the court continued the fact-finding hearing because the children's father was not present and the court wanted to hold only one hearing with all parents present, and this case, where the trial court determined that the same judicial officer should hear all of the evidence presented at the fact-finding hearing.

[20] Still, Mother claims that her due process rights were violated because the "State imparted a right to Mother—the right to a fact[-]finding hearing within a certain time[-]frame—and then failed to give that right." Appellant's Br. at 19. Because CHINS proceedings carry a significant potential to interfere with the rights of parents in the upbringing of their children, due process concerns at all stages of a CHINS proceeding are of paramount concern. *Matter of Eq.W.*, 124 N.E.3d 1201, 1209 (Ind. 2019) (citations omitted).

[21] The Due Process Clause of the United States Constitution prohibits state action that "deprives a person of life, liberty or property without a fair proceeding." *Matter of E.T.*, 152 N.E.3d 634, 640 (Ind. Ct. App. 2020), *trans. denied*. Due process "requires the opportunity to be heard at a meaningful time and in a meaningful manner." *In re K.D.*, 962 N.E.2d 1249, 1257 (Ind. 2012) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Although due process "is not dependent on the underlying facts of the particular case, it is nevertheless flexible and calls for such procedural protections as the particular situation demands." *Matter of E.T.*, 152 N.E.3d at 640.

[22] Mother has not established that the fact-finding hearing, which was only delayed thirteen days beyond the 120-day time limit, was unfair or that she was denied the opportunity to be heard at a meaningful time. And Mother has not persuaded us that the thirteen-day delay disrupted her family to the degree that a due process violation occurred. Because we conclude that the thirteen-day delay did not violate Mother's due process rights, we do not address her argument that the alleged due process violation constituted fundamental error.

## Ineffective Assistance of Counsel

[23]  Mother also argues that she was denied her right to effective assistance of counsel during these CHINS proceedings. Mother acknowledges that our courts have not yet addressed the precise issue presented here in a published opinion: whether Mother is entitled to the effective assistance of counsel in CHINS proceedings. Our supreme court has held that parents whose parental rights to their children are terminated may raise a claim of ineffective assistance of trial counsel. *See Baker v. Marion Cnty. Off. of Fam. & Child.*, 810 N.E.2d 1035, 1041 (Ind. 2004).

[24]  Parents have a right to counsel in CHINS proceedings. *In re G.P.*, 4 N.E.3d 1158, 1162-63 (Ind. 2014). And Mother argues that "the right to counsel and the right to effective assistance of counsel are one and the same . . . ." Appellant's Br. at 22. Our supreme court has stated that "the right to counsel is the right to the effective assistance of counsel." *See Bobadilla v. State*, 117 N.E.3d 1272 (Ind. 2019). Moreover, "due process protections at all stages of CHINS proceedings are 'vital' because '[e]very CHINS proceeding has the potential to interfere with the rights of parents in the upbringing of their children.'" *G.P.*, 4 N.E.3d at 1165 (quoting *In re K.D. v. Ind. Dep't of Child Servs.*, 962 N.E.2d 1249, 1257 (Ind. 2012)). The *G.P.* court also observed that CHINS and termination of parental rights proceedings "are deeply and obviously intertwined to the extent that an error in the former may flow into and infect the latter . . . ." *Id.* For these reasons, it would be illogical to conclude that the right to effective

assistance of counsel, which has been recognized in termination proceedings, does not also apply to CHINS proceedings.

[25] In termination of parental rights proceedings, our supreme court has established the following test to determine the effectiveness of counsel:

> Where parents whose rights were terminated upon trial claim on appeal that their lawyer underperformed, we deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination. The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest.

*Baker*, 810 N.E.2d at 1041.

[26] Because DCS may allege that a child is a CHINS for any of the reasons enumerated in Indiana Code chapter 31-34-1, whether counsel was ineffective must be considered in light of the specific reasons that DCS alleged and that the trial court has found in determining that a child is a CHINS. Therefore, the question is whether counsel's overall performance was so defective that our court cannot say with confidence that J.N. is a CHINS for the reasons found in the court's order. In this case, the trial court found that J.N. was a CHINS because DCS proved that she was exposed to her parents' domestic violence and she needs care, treatment, and rehabilitation that she is not receiving and that is unlikely to be provided without the coercive intervention of the court.

[27] Mother argues that her counsel was ineffective for failing to object when the trial court continued the fact-finding hearing beyond the 120-day statutory deadline and for failing to file a motion to dismiss the CHINS petition because the court failed to hold the hearing within 120 days as required by statute. Appellant's Br. at 25. But Mother does not explain how counsel's performance was so defective that we cannot be confident in the trial court's finding that J.N. is a CHINS. Mother merely repeats her allegation that the delay "disrupted her family." *Id.*

[28] DCS argues that it is likely that Mother's counsel did not file a motion to dismiss because the remedy would have been dismissal of the CHINS petition without prejudice. I.C. § 31-34-11-1(d). Father admitted that J.N. was a CHINS and Mother refused to participate in services aimed at preventing future domestic violence; therefore, DCS contends that it would have refiled the petition because J.N.'s well-being would still be endangered. Appellee's Br. at 29. This would have resulted in additional delay of the proceedings and further disruption of Mother's family.

[29] Furthermore, assuming for the sake of argument that counsel should have filed a motion to dismiss, counsel's failure does not undermine our confidence in the court's finding that J.N. is a CHINS. And Mother does not challenge the evidence or the trial court's finding that J.N. is a CHINS. Mother also does not argue that counsel's performance during the fact-finding hearing was ineffective. Finally, we observe that counsel presented evidence, cross-

examined DCS's witnesses, objected to the admission of evidence, and argued on Mother's behalf.

[30] For all of these reasons, we are not persuaded by Mother's claim that counsel's performance was so defective that it undermines our confidence in the outcome of the CHINS proceedings.

## Conclusion

[31] Mother has presented numerous arguments challenging the fairness of the trial court's decision to hold the CHINS fact-finding hearing thirteen days beyond the 120-day statutory deadline. Our courts and General Assembly have recognized that it is of utmost importance for trial courts to expeditiously address cases that disrupt family life. But here, the trial court found good cause for the thirteen-day delay, and Mother has not persuaded us that her due process rights were violated or that counsel's failure to object to the delay or to file a motion to dismiss the CHINS petition undermines our confidence in the trial court's order adjudicating J.N. a CHINS. We therefore affirm the trial court's order.

[32] Affirmed.

May, J., and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Peter Laramore
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana