938 N.E.2d 1272 (2010)
K.A., Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 49A02-1004-JV-527.
Court of Appeals of Indiana.
December 30, 2010.
Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Janine Steck Huffman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

*1273 OPINION
VAIDIK, Judge.

Case Summary
The juvenile court entered dispositional orders under two different cause numbers placing fifteen-year-old K.A. on probation. When K.A. allegedly violated his probation, the juvenile court held a hearing and modified its dispositional orders. K.A. now appeals the modification of his disposition. He contends that the juvenile court violated his due process rights by modifying his disposition after a hearing at which the State presented no evidence of the alleged probation violation. We conclude that because the modification was predicated on the alleged probation violation, principles of fundamental fairness required the State to present evidence of the allegation. Because K.A. was denied due process, we reverse.

Facts and Procedural History
In October 2009, the State filed a petition in cause number 49D09-0910-JD-3345 ("JD-3345") alleging K.A. to be a delinquent child for committing what would be Class D felony theft if committed by an adult. K.A. entered into a plea agreement the next month wherein he pled guilty to the delinquent act of theft and the State dismissed allegations pending in other cause numbers. The juvenile court entered a dispositional order in December 2009 placing K.A. on probation for six months.
In February 2010, the State filed a petition in cause number 49D09-1002-JD-335 ("JD-335") alleging K.A. to be a delinquent child for committing what would be Class D felony theft and Class A misdemeanor resisting law enforcement if committed by an adult. K.A. entered into a plea agreement later that month wherein he pled guilty to the delinquent acts of conversion and resisting law enforcement. The juvenile court entered a dispositional order awarding wardship of K.A. to the Indiana Department of Correction but suspended the commitment and placed K.A. on probation for six months.
In March 2010, the probation department alleged that K.A. violated his probation under JD-3345 and JD-335 by being a runaway and requested modification of his disposition. At the initial hearing the following day, K.A. denied the allegation. The juvenile court granted K.A.'s request for an attorney, set the case for a modification hearing, and ordered K.A. detained until then.
At the modification hearing, the State presented no evidence of the alleged probation violation. Instead, at the start of the hearing, the probation department recommended that K.A. continue on a suspended commitment to the Department of Correction and also participate in and comply with a forty-five-day diagnostic placement at the INTAC Emergency Shelter of the Youth Opportunity Center, which is located outside K.A.'s county of residence. The State agreed with a diagnostic placement but requested that it take place at a secure facility.
K.A. objected to modification because the State presented no evidence of the alleged probation violation. The juvenile court overruled the objection. When the court proceeded to modification, K.A. presented evidence that Resource Treatment Facility is comparable to the Youth Opportunity Center, available to K.A., and in K.A.'s county of residence.
The juvenile court ordered a suspended commitment to the Department of Correction and required K.A. to complete a forty-five-day diagnostic placement at the INTAC Emergency Shelter of the Youth Opportunity *1274 Center as a special condition of probation.
K.A. now appeals.

Discussion and Decision
K.A. contends that the juvenile court violated his due process rights by modifying his disposition after a hearing at which the State presented no evidence of the alleged probation violation. K.A. also contends that the juvenile court abused its discretion by placing him at the Youth Opportunity Center. Because we find the first issue dispositive, we decline to address the second.
The juvenile court system is founded on the notion of parens patriae, which allows the court to step into the shoes of the parents. In re K.G., 808 N.E.2d 631, 635 (Ind.2004). The parens patriae doctrine gives a juvenile court the power to further the best interests of the child, which implies a broad discretion unknown in the adult criminal court system. Id. at 636. The juvenile court therefore has wide latitude and great flexibility in its dealings with juveniles. In re M.T., 928 N.E.2d 266, 268 (Ind.Ct.App.2010), trans. denied. The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will be reversed only if there has been an abuse of that discretion. Id. The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. Id. An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. Id.
A juvenile charged with delinquency is entitled to have the court apply those common law jurisprudential principles which experience and reason have shown are necessary to give the accused the essence of a fair trial. In re K.G., 808 N.E.2d at 635 (citing In re Gault, 387 U.S. 1, 30-31, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). These principles include the right to have competency determined before being subjected to delinquency proceedings, the right to adequate notice of the charges, the right to appointment of counsel, the privilege against self-incrimination, and the right to confront and cross-examine opposing witnesses. Id. The issue presented in this case is whether the due process rights of a juvenile additionally include the right to an evidentiary hearing before the juvenile court modifies disposition based on an alleged probation violation.
Indiana Code section 31-37-22-1 provides that a probation officer, among others, may request modification of a juvenile's disposition:
While the juvenile court retains jurisdiction under IC 31-30-2 [continuing juvenile court jurisdiction], the juvenile court may modify any dispositional decree:
(1) upon the juvenile court's own motion;
(2) upon the motion of:
(A) the child;
(B) the child's parent, guardian, custodian, or guardian ad litem;
(C) the probation officer; or
(D) the prosecuting attorney; or
(3) upon the motion of any person providing services to the child or to the child's parent, guardian, or custodian under a decree of the court.
"If the motion requests any ... modification [other than an emergency change in the child's residence], the probation officer shall give notice to the persons affected and the juvenile court shall hold a hearing on the question." Ind.Code § 31-37-22-3(b). *1275 Although the statute does not specify what the hearing must include, we clarified one requirement of such a hearing in In re M.T., 928 N.E.2d at 271. After examining basic due process principles and case law precedent, we held that a juvenile court may not modify a juvenile's disposition without a hearing at which the State presents evidence supporting the allegations listed in the revocation petition. Id.
The State argues that In re M.T. was incorrectly decided because it "rewrit[es] the juvenile modification statute to insert a requirement of a probation violation where no such requirement exists." Appellee's Br. p. 12-13. The Indiana Code does not explicitly require a probation violation before a juvenile court may modify a juvenile's disposition. We conclude, however, that when modification is predicated on an alleged probation violation, principles of fundamental fairness require that the State present evidence of the allegation. See In re M.T., 928 N.E.2d at 271 ("We believe `fundamental fairness' in this setting requires morespecifically, some evidence of the wrongdoing on which the modification is premised.").
The State then argues that the juvenile court's decision to modify was not based on K.A.'s alleged probation violation and points out that the court said, before accepting the probation department's recommendation for modification, "Close out the violation," Tr. p. 22, and stated in its order, "The Court orders the violation dated 3/3/10 dismissed and closed," Appellant's App. p. 10. We cannot find these two statements dispositive given the rest of the record in this case. The record shows that the probation department filed an information alleging that K.A. violated his probation under JD-3345 and JD-335 by being a runaway and requested modification of his disposition. An initial hearing was held the next day. K.A. denied the allegation, and the juvenile court set the case for a modification hearing. The probation department's modification report, prepared for the modification hearing, stated that the reason for the requested modification was "[d]ue to the youth's recent referral and violation." Id. at 63. Because the purpose of the hearing was to determine whether modification was necessary in light of the alleged probation violation, the record indicates that the modification of K.A.'s disposition was predicated on the alleged probation violation. The juvenile court's modification of K.A.'s disposition without any evidence of his alleged probation violation was therefore a violation of due process.
The State nonetheless argues that "evidence was presented at K.A.'s revocation hearing concerning the runaway as a probation violation." Appellee's Br. p. 13. As support, the State first claims, "In the modification report filed by probation, Respondent admitted he was `on the run' and stayed at a friend's home." Id. at 12. This claim fails. Even if the modification report constituted evidence of the alleged probation violation, because K.A. was deprived of an evidentiary hearing, he was not given an opportunity to respond to allegations in the modification report either through his own testimony or through cross-examination of the probation officer who prepared the report.
The State also claims that the statements of K.A. and his mother at the modification hearing constituted evidence of K.A.'s alleged probation violation. Specifically, the State points out that K.A.'s mother said, "[H]e made the choice to leave home. I didn't tell him to leave. I didn't put him out. Every time he comes, he run, and I just want [K.A.], like I say, to get some help." Tr. p. 20, and K.A. responded that he "agree[d] with" his mother, id. at 21.
*1276 This argument is flawed. These statements were made: (1) only after the probation department and the State made their modification recommendations, K.A. had preserved the record as to his objection to the lack of evidence of the alleged probation violation, and K.A. made a modification recommendation standing on that objection, and (2) in direct response to the juvenile court asking K.A. and his mother whether they wanted to add anything before it made its modification order. As evidenced by the fact that the hearing immediately began with the probation department's modification recommendation and that the juvenile court overruled K.A.'s objection to the lack of evidence of the alleged probation violation, the point of the hearing was merely to determine how K.A.'s disposition would be modified. The fact that he had violated his probation was apparently, and improperly, a foregone conclusion.
The juvenile court violated K.A.'s due process rights when it modified his disposition based on an alleged probation violation for which no evidence was presented.
Reversed.
BAKER, C.J., and BARNES, J., concur.