**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 03 2012, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**MICHELLE LAUX**
St. Joseph County Public Defender

**T. DANIEL REYNOLDS**
Judicial Intern
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COPPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.R., | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )     No. 71A03-1203-JV-105 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable Peter J. Nemeth, Judge
Cause No. 71J01-1107-JD-378

**July 3, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

J.R., seventeen years old and pregnant, was on probation and electronic home monitoring when the probation department filed a petition to modify her disposition. J.R. contends that the juvenile court abused its discretion in modifying her probation and placing her in a residential program at Gateway Woods. Given that the evidence before the juvenile court was that J.R.'s father did not want his pregnant teen daughter in his home on electronic home monitoring on at least one occasion, J.R. wanted to keep the baby, and J.R.'s parents wanted her to consider adoption, we conclude that the juvenile court did not abuse its discretion in modifying J.R.'s probation and placing her at Gateway Woods, where she can learn parenting skills and the baby can have a safe and secure home. We therefore affirm.

**Facts and Procedural History**

In July 2011, the State filed a petition alleging that seventeen-year-old J.R. was a juvenile delinquent for committing battery and disorderly conduct, both Class B misdemeanors if committed by an adult. Pursuant to a plea agreement, J.R. admitted to battery, and the State agreed to dismiss disorderly conduct.[1] On September 19, 2011, J.R. began formal probation. As part of J.R.'s formal probation, the juvenile court placed her on electronic monitoring in her parents' home. J.R. and her father signed a contract for home detention. Appellant's App. p. 50. The contract provides, in relevant part:

> The juvenile and I understand and agree to comply with the following rules and conditions of the Home Detention program. We are signing this contract with the understanding that failure to comply with any of the rules may result in the termination of Home Detention and the return of the

---

[1] It appears that J.R. also admitted to theft under another cause number.

juvenile to secure detention at the St. Joseph County Juvenile Justice Center or such other placement as may be allowed by law.

* * * * *

1. The juvenile and I agree to the juvenile's placement in the Home Detention Program.

*Id.* at 47.

Between September 9, 2011, and November 16, 2011, J.R. learned that she was pregnant. J.R. wanted to keep the baby, but J.R.'s parents wanted her to consider adoption. Appellant's Br. p. 4-5.

On November 16, 2011, the probation department filed a verified petition for modification, which alleged:

On 11/15/11, at approximately 12:20 hours, [J.R.] was detained from her residence by the South Bend Police Department for a violation of the Home Detention Contract. On this date, [J.R.'s] father came to the Juvenile Justice Center and advised the Probation Officer that he no longer wanted [J.R.] in his home on the Electronic Monitoring Program. Mr. Robertson's decision results in a violation of EMP Rule #1: The juvenile and I agree to the juvenile's placement in the Home Detention Program. There have been on going [sic] problems with [J.R.] following the home rules while on EMP and Mr. Robertson decided that he has had enough.

Appellant's App. p. 5. The probation department recommended that J.R. remain in secure detention pending staffing. Accordingly, the juvenile court ordered J.R. to remain in secure detention at the Juvenile Justice Center, ordered the probation department to staff the case, and authorized J.R.'s release to attend any necessary prenatal appointments.

On December 2, 2011, at the request of the probation department, the juvenile court ordered J.R. released to the custody of her father on electronic monitoring and to undergo a diagnostic evaluation by Dr. Sibilla pending any modification.

3

On February 13, 2012, the probation department filed a second verified petition for modification that contained the same language as its November 16, 2011, petition and requested both a two-week continuance and that J.R. be placed in secure detention pending acceptance into a residential placement. The juvenile court granted the continuance but released J.R. to her parents pending any modification.

On February 27, 2012, the probation department filed a third verified petition for modification that again contained the same language as its November 16, 2011, and February 13, 2012, petitions and indicated that J.R.'s case had been staffed twice and recommended that J.R. participate in a residential program at Gateway Woods, which is an Apostolic Christian Children's Home for pregnant teens and teen moms in Leo, Indiana. The probation department said that J.R. had been accepted at Gateway Woods.

On February 28, 2012, the Indiana Department of Child Services submitted a report that was contrary to the probation department's recommendation. DCS did not believe that placement at Gateway Woods, which was two hours away, was necessary and instead recommended home-based, family-centered casework services, individual and family therapy, and continued substance-abuse outpatient treatment.

A modification hearing was also held on February 28, 2012. At the hearing, a probation officer testified that on November 15, 2011, J.R.'s father came to the Juvenile Justice Center and told them that he no longer wanted J.R. in his home, which violated the home-detention contract; as a result, the probation department recommended that J.R. "participate and successfully complete the residential program at Gateway Woods. She's been accepted into the program. Consents have not been granted by DCS." Tr. p. 3.

J.R.'s attorneys, however, said that they disagreed with the probation department's recommendation that J.R. be sent to Gateway Woods because

> [when J.R.'s father] walked into the probation office in November . . ., he did not understand that by doing so that would end the electronic monitor and he certainly didn't understand that by ending the contract this would cause his daughter to be sent away and both the father and the mother here, both at the time and continuously, want [J.R.] in their home and that is the only part of the contract that [J.R.] has said to have violated, which is parental consent and that parental consent is there then and is there now and since November [J.R.] has been doing exceptionally well.

*Id.* at 4. J.R.'s mother and father both testified that they would like J.R. to be on daily monitoring with counseling. In addition, J.R. testified that she wanted to stay at home, be in the presence of her family, and participate in the Family and Children Center program. The probation officer testified, however, that the Family and Children Center might not be able to provide J.R. with the parenting services "that she would need to become a responsible parent at this point." *Id.* at 11. The juvenile court believed that if J.R. was "intent on being a mother," then "the program in Leo is probably the best thing that can happen because it can better prepare you to handle that situation." *Id.* at 9-10. The juvenile court concluded:

> As we've had this conversation here this morning, I've come to the conclusion that I think Gateway Woods is the best recommendation for you, [J.R.]. I think it gives you the opportunity. Obviously, you're the one that has to make a success out of it, but I think in view of what's at stake here, not only for you but for the unborn child, I think that we need to do the best thing for everybody, and I believe that would be the best thing. The Court is going to grant the request of the probation department.

*Id.* at 14. Accordingly, the juvenile court modified its prior dispositional order and placed J.R. at Gateway Woods. Appellant's App. p. 43.

5

J.R. now appeals the modification of her probation and placement at Gateway Woods. She asks us to expedite her appeal pursuant to Indiana Appellate Rule 21(B) because she is expected to give birth in July 2012.

**Discussion and Decision**

J.R. contends that the juvenile court abused its discretion in modifying her probation. The juvenile-court system is founded on the notion of *parens patriae*, which allows the court to step into the shoes of the parents. *K.A. v. State*, 938 N.E.2d 1272, 1274 (Ind. Ct. App. 2010), *trans. denied*. The *parens patriae* doctrine gives a juvenile court the power to further the best interests of the child, which implies a broad discretion unknown in the adult criminal-court system. *Id.* The juvenile court therefore has wide latitude and great flexibility in its dealings with juveniles. *Id.* The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will be reversed only if there has been an abuse of that discretion. *Id.* The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id.* An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.*

Indiana Code section 31-37-22-1 provides that a probation officer, among others, may request modification of a juvenile's disposition:

6

> While the juvenile court retains jurisdiction under IC 31-30-2 [continuing juvenile court jurisdiction], the juvenile court may modify any dispositional decree:
>
> (1) upon the juvenile court's own motion;
> (2) upon the motion of:
>     (A) the child;
>     (B) the child's parent, guardian, custodian, or guardian ad litem;
>     (C) the probation officer; or
>     (D) the prosecuting attorney; or
> (3) upon the motion of any person providing services to the child or to the child's parent, guardian, or custodian under a decree of the court.

"If the motion requests any . . . modification [other than an emergency change in the child's residence[2]], the probation officer shall give notice to the persons affected and the juvenile court shall hold a hearing on the question." Ind. Code § 31-37-22-3(b). The Indiana Code does not explicitly require a probation violation before a juvenile court may modify a juvenile's disposition. *Id.* However, when modification is predicated on an alleged probation violation, principles of fundamental fairness require that the State present evidence of the allegation. *K.A.*, 938 N.E.2d at 1275.

Here, on November 16, 2011, the probation department filed a petition for modification, not because J.R. violated her probation, but rather because J.R.'s father no longer wanted his pregnant teen daughter in his home on electronic monitoring. Appellant's App. p. 2, 3, 5. A modification hearing was held on February 28, 2012. J.R. as well as her parents testified at the hearing. Evidence was presented of instability in J.R.'s life. That is, at least at one point in time, J.R.'s father did not want his pregnant

---

[2] J.R. argues that Indiana Code section 31-37-22-3(a) – temporary order for emergency change in the child's residence – was used here; however, the probation department did not request a temporary order for an emergency change in J.R.'s residence. Rather, J.R. was given notice and a hearing before the trial court made its modification. Notably, a temporary order for an emergency change in a child's residence does not require notice and a hearing beforehand. *See* Ind. Code § 31-37-22-3(a).

7

teen daughter in his home. As a result, J.R. was detained and sent to secure detention. She was later returned home on electronic monitoring pending any modification. Once this evidence of instability was before the juvenile court, it was entirely appropriate for the juvenile court to look at the whole picture. The whole picture included the fact that J.R. was a pregnant teen with diagnoses of oppositional defiant disorder and bipolar disorder, and there was a rift in the family regarding what to do once the baby was born. *See* id. at 23 (report listing J.R.'s diagnoses); Tr. p. 8 (defense counsel: "My take is while the parents and [J.R.] have a disagreement over what should happen with this child, I think it's best to let them go through that process together to make a decision that's best for their family.").

After listening to all the interested parties, the juvenile court concluded that Gateway Woods was the best option because "it trains [J.R.] to handle this child and it's certainly going to be good for the child because the child will have a safe and secure home when the child arrives." Tr. p. 13. Given that the evidence before the court was that J.R.'s father did not want his pregnant teen daughter in his home on at least one occasion, J.R. wanted to keep the baby, and J.R.'s parents wanted her to consider adoption, the juvenile court did not abuse its discretion in modifying J.R.'s disposition and placing her at Gateway Woods, where she can learn parenting skills and the baby can have a safe and secure home.

Affirmed.

CRONE, J., and BRADFORD, J., concur.