## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 16 2018, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Lee M. Stoy, Jr.
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.C., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | November 16, 2018 <br><br> Court of Appeals Case No. 18A-JV-738 <br><br> Appeal from the Noble Superior Court <br><br> The Honorable Robert E. Kirsch, Judge <br><br> Trial Court Cause No. 57D01-1711-JD-67 |

**Robb, Judge.**

# Case Summary and Issues

[1] A.C. was adjudicated a delinquent child and the juvenile court awarded wardship of him to the Indiana Department of Correction ("DOC"). A.C. appeals, raising two issues for our review: 1) whether the juvenile court committed fundamental error in proceeding to disposition without a predispositional report; and 2) whether the juvenile court abused its discretion in committing A.C. to the DOC. Concluding no fundamental error occurred and that the disposition was not an abuse of discretion, we affirm.

# Facts and Procedural History

[2] On September 24, 2016, A.C., who was then sixteen years old, was left in charge of his seven-year-old niece, C.A., while her parents went to the store. While they were gone, A.C. came into C.A.'s room and began moving his hips in front of her face. He then pushed her down on the bed, and while both were fully clothed, rubbed his penis on her vagina, attempted to kiss her, and rubbed her "bottom" with his hand. Transcript, Volume 2 at 37. C.A. told her mother what had happened when she returned, and the family reported the incident to police. A.C. is originally from Honduras. He came to the United States in August 2016 to live with his mother in Noble County. Neither speaks English. A.C. admitted he had been in C.A.'s room to help her find her bookbag and that they had fallen onto her bed when they hugged but stated that he got up

immediately and denied that he rubbed against her. These events occurred in Allen County.[1]

[3] At the conclusion of the fact-finding hearing, the Allen Superior Court found the State proved beyond a reasonable doubt that A.C. had committed the equivalent of child molesting, a Level 4 felony if committed by an adult. The Allen Superior Court released A.C. to his mother and by agreement of the parties, referred the matter to Noble County for disposition. The fact-finding order does not direct preparation of a predispositional report. The Noble Superior Court ordered a psychological examination, which showed A.C. suffered from Major Depressive Disorder and Schizophrenia with a history of auditory and visual hallucinations. The psychologist recommended A.C. be placed in a residential treatment program.

[4] No predispositional report was filed. At the dispositional hearing, the State and the juvenile probation officer recommended A.C. be committed to the DOC. The Noble Superior Court found that A.C. is at a higher risk of re-offending due to the seriousness of the crime and A.C.'s denial of any wrongdoing. The court therefore awarded wardship of A.C. to the DOC. A.C. now appeals.

# Discussion and Decision

[1] The delinquency petition was filed in Noble County, which then transferred the case to Allen County because the events occurred there. Allen County completed the preliminary inquiry report and conducted the initial and fact-finding hearings and then transferred the case back to Noble County for disposition.

# I. Predispositional Report

[5]     A.C. first contends his disposition should be vacated because no predispositional report was prepared. A.C. acknowledges he did not object to the lack of a predispositional report but alleges the juvenile court committed fundamental error in proceeding to disposition without the report.

[6]     In the chapter concerning delinquency factfinding hearings, Indiana Code section 31-37-13-2 provides that if a court finds that a child is delinquent, the court *shall*: enter judgment accordingly, order a predispositional report, schedule a dispositional hearing, and complete a dual status screening tool. *See also* Ind. Code § 31-37-17-1 (in the chapter concerning predispositional reports, stating that upon finding that a child is delinquent, the court *shall* order a probation officer to complete a predispositional report that contains certain information).

[7]     There is no question that Allen County, as the factfinding court, did not order a predispositional report before it transferred the case to Noble County for disposition. And there is no question that Noble County, as the dispositional court, also did not order a predispositional report before holding a dispositional hearing. *See* Brief of Appellee at 12 (State conceding that a predispositional report was not prepared in this case). A.C. is therefore correct that the mandates of the juvenile delinquency statutes were not followed to the letter. However, Indiana Code section 31-37-17-6 obligates the court to provide a copy of the report to each attorney before the dispositional hearing. Therefore, A.C.

had notice that such report was not prepared, but failed to object to proceeding with the hearing. Generally, issues raised for the first time on appeal are waived for our review. *In re K.S.*, 750 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2001) (holding that an allegation of a due process violation raised for the first time on appeal was waived). Acknowledging this, A.C. urges us to review this issue for fundamental error. "The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *R.W. v. State,* 975 N.E.2d 407, 411 (Ind. Ct. App. 2012) (internal quotation marks omitted), *trans. denied*. Fundamental error is defined as an error so prejudicial to the rights of a juvenile that a fair hearing is impossible. *Id.*

[8] In arguing he was not afforded a fair dispositional hearing, A.C. primarily relies on the fact that the Noble County court already had limited information about him and his case because it did not conduct the factfinding hearing. The juvenile court acknowledged as much when announcing its disposition by stating,

> This is a very very difficult case as far as I am concerned. First of all is the fact that this Court was not the Court that heard the evidence at the fact finding hearing and therefore the Court does not have any great knowledge of the offense itself or the act itself other than what I can see in the Court file.

Tr., Vol. 2 at 78.

[9] "The standard for determining what due process requires in a particular juvenile proceeding is fundamental fairness." *D.A. v. State*, 967 N.E.2d 59, 64 (Ind. Ct. App. 2012) (internal quotation marks omitted). A juvenile charged with delinquency is entitled to the "common law jurisprudential principles which experience and reason have shown are necessary to give the accused the essence of a fair trial." *K.A. v. State*, 938 N.E.2d 1272, 1274 (Ind. Ct. App. 2010), *trans. denied*. This includes the right to have a competency determination, the right to notice of the charges, the right to counsel, the privilege against self-incrimination, and the right to confront witnesses. *Id.* A.C. was given notice of the allegation against him, had counsel and an interpreter, and was afforded an evidentiary hearing at which his counsel cross-examined the State's witnesses and he testified on his own behalf. Prior to the dispositional hearing, the Noble County court ordered a psychological assessment and A.C.'s counsel provided to the court a Case Conference Committee Report from the West Noble School Corporation regarding A.C.'s academic performance and educational needs. The juvenile probation officer was present at the dispositional hearing and testified to the recommendations of the probation department. A.C.'s mother also testified.

[10] Notably, in the adult criminal context, our supreme court has stated that having a presentence investigation report considered prior to sentencing "is a privilege granted by the legislature, not a fundamental right." *Smith v. State*, 432 N.E.2d 1363, 1373 (Ind. 1982). The purpose of a predispositional report is to provide the court the information it needs to fashion an appropriate disposition. *Cf.*

*Dillard v. State*, 827 N.E.2d 570, 576 (Ind. Ct. App. 2005) (discussing presentence investigation reports), *trans. denied*. Therefore, a predispositional report is to include, among other things, a statement of the child's needs for care, treatment, rehabilitation, or placement; and a recommendation for the child's care, treatment, rehabilitation, or placement. Ind. Code § 31-37-17-1(a)(1), (2).[2] The psychological evaluation addressed A.C.'s needs, and the probation officer testified at the dispositional hearing regarding the probation department's recommendation. It is unclear what additional information the predispositional report would have been able to provide that would have assisted the juvenile court. Although we certainly do not excuse the failure of the juvenile court, the State, the probation department, and even A.C.'s counsel to assure that a predispositional report was prepared, especially where, as here, A.C. and his mother are unable to speak English and advocate for A.C. themselves,[3] we cannot say the failure to observe the procedure required by

---

[2] Subsections (3) and (4) of Indiana Code section 31-37-17-1 are not applicable here because the recommendation was for A.C. to be placed in a secure detention facility. Subsection (5) requires a statement of whether the child receives Medicaid. A.C.'s immigration status is unclear, but given his recent immigration to the United States, it is unlikely that he would be eligible for Medicaid. *See* 8 U.S.C. § 1613(a) (stating qualified aliens who enter the United States on or after August 22, 1996 are not eligible for federal public benefits for a period of five years after entry).

[3] We acknowledge that in *Mejia v. State*, 702 N.E.2d 794, 798 (Ind. Ct. App. 1998), a panel of this court determined that because the trial court's sentencing of an adult defendant did not comply with statutory requirements to have a written presentence report prepared by a probation officer and provided to the defendant prior to sentencing, the case must be remanded for a new sentencing hearing to be conducted in compliance with the statutes. One of the statutes in question provides that "a defendant convicted of a felony *may not be sentenced* before a written presentence report is prepared by a probation officer and considered by the sentencing court." Ind. Code § 35-38-1-8(a) (emphasis added). Similar language used to exist regarding juvenile cases but no longer does. *See Howard v. State*, 175 Ind. App. 575, 372 N.E.2d 1237, 1240 n.1 (1978) (quoting now-repealed Indiana Code section 33-12-2-14: "No hearing concerning delinquent children . . . shall be finally disposed of before a written prehearing investigation report, prepared by a probation officer, is

statute rises to the level of fundamental error because the dictates of due process were followed and A.C. was afforded a fundamentally fair proceeding.

## II. Disposition

A.C. also contends the juvenile court abused its discretion in ordering him to be committed to the DOC. When announcing its disposition, the juvenile court explained,

> [T]he options available to the Court at this point in time are commitment to the [DOC] for placement at the Indiana Boy's [sic] School, a residential placement, or probation[.] . . . [A.C.] is almost 18, he will be 18 . . . basically a month from now . . . . [T]he Court has the ability to exercise jurisdiction until [A.C.] is 21 years of age. That is true. However, as I think we all know the Court's ability to effectively assert that jurisdiction . . . after age 18 it just almost goes away. . . . So, even though the Court can exercise jurisdiction until age 21, it really doesn't offer the Court much or many alternatives. You know, the residential placement is probably not a viable alternative for many reasons, so that if we eliminate the residential placement we are with [sic] between probation and a commitment to the [DOC]. Probation we have an individual who denies his culpability, given his strenuous denial of his culpability, . . . sex offender treatment as [the psychologist] pointed out in his report will probably be ineffective. We have the language barrier or problem which although not [A.C.'s] fault necessarily, still it is a complicating situation, and the Court recognizes the language barrier is applicable to the [DOC]. . . . Whether it be language, whether it be psychological issues, whether it be sex offense issues, I mean I

presented to and considered by the hearing judge.")). The statutes as well as the circumstances here are sufficiently distinguishable that we are not compelled to follow *Mejia* in this case.

have to work on the assumption that [the DOC] can provide the necessary services for [A.C.]. . . . [B]etween residential placement and the [DOC], I consider the [DOC] to be rehabilitative. . . . [T]he practicality of the matter is the placement at the [DOC] would probably be a shorter term placement, undoubtedly a shorter term placement than residential treatment would be. . . . [G]iven the options I have available to me which are not the greatest[, g]iven his age, given the issues raised by [the psychologist], I think that placement at the [DOC] or placement in the Indiana Boys School is the most reasonable option available to the Court. So that will be the Court's order.

Tr., Vol. 2 at 78-81.

[12] A.C. argues the juvenile court based its disposition on the erroneous belief that A.C.'s age and inability to speak English deprived the court of any viable alternatives other than commitment to the DOC. He urges us to reverse and impose a less restrictive sanction, preferably probation to be served while in his mother's custody.

[13] The juvenile court is accorded "wide latitude and great flexibility in dealing with juveniles[.]" *C.T.S. v. State*, 781 N.E.2d 1193, 1203 (Ind. Ct. App. 2003), *trans. denied*. The goal is to rehabilitate rather than punish the juvenile offender. *Id.* The specific disposition of a delinquent child is within the juvenile court's discretion, guided by the following considerations: the safety of the community, the child's best interests and freedom, the least restrictive alternative, family autonomy and life, and the freedom and opportunity for participation of the parent, guardian, or custodian. *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006). We reverse only for an abuse of discretion, that is, a

decision that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*.

[14] The law requires only that the disposition selected be in the least restrictive setting that is "consistent with the safety of the community and the best interest of the child[.]" Ind. Code § 31-37-18-6. After considering probation and residential placement, the juvenile court determined that because of the range of options available to address A.C.'s specific needs and unique circumstances (mental health treatment, language assistance, and sex offender treatment), commitment to the DOC was in A.C.'s best interest. Even if options less harsh than commitment to an institution are available, there are still times when commitment to a suitable institution is in the best interest of the juvenile and of society. *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005). Such is the case here. Although A.C. had not previously been in trouble in the United States, the juvenile court determined, based on a number of factors including A.C.'s age; his personal characteristics including the language barrier; and what the court considered the most rehabilitative, shortest-term option, that commitment to the DOC was the appropriate disposition. *See B.K.C. v. State*, 781 N.E.2d 1157, 1172 (Ind. Ct. App. 2003) (noting there are instances where a short term of confinement "may be one of the most effective rehabilitative techniques available[,]" as the first exposure to the consequences of continuing to break the law may compel a juvenile to "readjust his values and priorities in

life"). We cannot say the juvenile court's dispositional order was an abuse of discretion.

# Conclusion

Because A.C. received a fair hearing, he was not denied due process and cannot demonstrate fundamental error in the failure to prepare a predispositional report. The juvenile court's decision to commit A.C. to the DOC was not an abuse of discretion. The judgment of the juvenile court is therefore affirmed.

Affirmed.

Baker, J., and May, J., concur.