## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 25 2019, 6:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Renee M. Ortega
Lake County Juvenile
Public Defender's Office
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

L.C.,
*Appellant-Respondent,*

v.

State of Indiana,
*Appellee-Petitioner.*

January 25, 2019

Court of Appeals Case No.
18A-JV-1006

Appeal from the Lake Superior Court

The Honorable Thomas P. Stefaniak, Jr., Judge

The Honorable Robert G. Vann, Magistrate

Trial Court Cause Nos.
45D06-1610-JD-639
45D06-1701-JD-3

**Mathias, Judge.**

[1] L.C. appeals the juvenile court's probation modification from residential placement to the Department of Correction ("DOC"). L.C.'s arguments are threefold, which we restate as:

> (i) whether his due process rights were violated when he was not present at the dispositional hearing;

> (ii) whether his due process rights were violated because the State did not present evidence that L.C. had violated probation; and

> (iii) whether the trial court abused its discretion when it ordered L.C. to the DOC.

We affirm.

## Facts and Procedural History

[2] On October 13, 2016, L.C. kicked his uncle's dog "like a football" after the dog and another dog had begun growling and barking at one another. L.C. was charged with what would be cruelty to an animal as a Class A misdemeanor if committed by an adult, to which he admitted. He was placed on probation and released to his mother's care.

[3] In January of 2017, while L.C. was still on probation, police responded to a report of a battery at L.C.'s home. L.C.'s mother ("Mother") reported that Mother and L.C. had been verbally fighting for several days, and on December 31, 2016, L.C. approached her from behind and wrapped his hands around her neck. She also reported that the next day, on January 1, 2017, L.C. hit his mother's arm and kicked her in the stomach. The officer observed redness on

Mother's neck, arm, and stomach areas. L.C. was charged with battery resulting in bodily injury, a Class A misdemeanor if committed by an adult. The next day, he was charged with another battery resulting in bodily injury, a Class A misdemeanor if committed by an adult, in a separate cause. L.C. admitted to one count of battery resulting in bodily injury, and the other was dismissed.

[4] The court ordered a psychological evaluation on January 5, 2017. L.C. was diagnosed with persistent depressive disorder, cannabis use disorder, intellectual disability, and dependent personality traits with depressive features. L.C. also identified "sexual feelings" as one of his most troubling problems. Appellant's App. Vol. II, p. 106. Residential placement was recommended because he was identified as a danger to himself and others. As a result, L.C. was placed at Gibault treatment center.

[5] Just under two months later, in February of 2017, probation requested a modification of placement. Gibault had informed probation that L.C. had fled the facility on several occasions and therefore was no longer willing to have L.C. at its facility. L.C. admitted these allegations. L.C. was then detained until he was placed at Lakeside in Kalamazoo, Michigan on April 4, 2017.

[6] On November 1, 2017, probation requested that the court change L.C.'s placement from general population to the sexually maladaptive unit at Lakeside, after L.C.'s teacher caught him masturbating in class on more than one occasion. The court approved the request, with Mother's agreement.

[7] In February of 2018, Lakeside requested L.C.'s removal from its programming. Lakeside submitted a report detailing L.C.'s chronic noncompliance, lack of progress in the program, and his refusal to take his medications. Lakeside also emphasized that L.C. struggled with social interactions and has no understanding that his inappropriate sexual behavior has an effect on other individuals. This behavior was significantly disrupting Lakeside's programming for other patients. Based on this report, probation once again filed a petition for modification. The court held combined modification of probation and court ward review hearings on March 13 and 16, 2018.

[8] At the March 13, 2018 hearing, L.C., L.C.'s counsel, L.C.'s mother, L.C.'s probation officer, and three individuals from Lakeside Academy were present. The probation officer testified that Lakeside was asking for L.C.'s removal from their facility because of his non-compliance with programming. L.C. had masturbated in class and in front of female staff. He had been refusing to take his medication and had thrown away his core curriculum text. Probation then recommended placement in a specialized program in the Department of Correction for children who act out sexually.

[9] L.C.'s counsel indicated that L.C. did not deny that Lakeside wanted him removed from their facility but denied the underlying allegations. Counsel indicated that L.C.'s mother wanted L.C. to be seen by a psychiatrist at the Dyer Hospital and that L.C.'s mother wanted L.C. to be released to home monitoring. Counsel asserted that placement in the DOC would cause more harm. L.C. testified that he wanted to go home to his mother. L.C. also stated

that he was not masturbating; he simply has a rash and some knots in his groin area that caused him discomfort.

[10] The Director of the juvenile sex offender program at Lakeside testified that L.C. does not take ownership of his sexual issues and has broken confidentiality of other students in the program, has antagonized female staff, continues to masturbate in public, and wrote a sexually explicit letter to the assistant principal of the school. He had also run from the facility.

[11] L.C.'s mother testified that she believed the DOC would not help him and she wanted him to be placed with another mental health facility. At the conclusion of the March 13, 2018, hearing, L.C. was transported to the Acute Psychological Unit at St. Margaret's in Dyer, Indiana, to undergo an updated psychiatric evaluation.

[12] On March 16, 2018, the court re-convened. L.C. was still at St. Margaret's. The updated psychiatric evaluation had been completed. L.C. was able to be discharged, but probation's security team had not yet been able to securely transport him. However, both L.C.'s counsel and his Mother were present. L.C.'s mother testified that she had spoken with the doctor at St. Margaret's, who had identified an issue with the medications L.C. had been given at Lakeside. Probation continued to recommend that the sex offender program at the DOC, which "will not kick him out as Lakeside had." Tr. p. 6. Mother continued to assert her position in the prior hearing, that she felt that placement in the DOC would not help. She also indicated that L.C. had told her he did

not feel he was a danger to society. The court took the matter under advisement and, on March 22, 2018, entered an order granting wardship of L.C. to the DOC, with recommendation that L.C. participate in the "INSOM services at the Pendleton Juvenile Correctional Facility for his sexually maladaptive behavior and low cognitive function." Appellant's App. Vol. III, p. 119. L.C. appeals the March 22, 2018 order.

# Discussion and Decision

## *Due Process*

[13] Indiana Code section 31-37-22-1(a) governs the modification of a juvenile dispositional decree. It provides:

> While the juvenile court retains jurisdiction under IC 31-30-2, the juvenile court may modify any dispositional decree:
>
> (1) upon the juvenile court's own motion:
>
> (2) upon the motion of:
>
> > (A)  the child;
> >
> > (B)  the child's parent, guardian, custodian, or guardian ad litem;
> >
> > (C)  the probation officer; or
> >
> > (D)  the prosecuting attorney; or
>
> (3) upon the motion of any person providing services to the child or to the child's parent, guardian, or custodian under a decree of the court.

Ind. Code § 31-37-22-1(a). Upon a request for modification, "the probation officer shall give notice to the persons affected and the juvenile court shall hold a hearing on the question." Ind. Code § 31-37-22-3(b). While the legislature has required notice and a hearing, the statutes do not explicitly define what sort of hearing is necessary. We have previously held that consideration of basic due process principles requires an evidentiary hearing. *In re M.T.*, 928 N.E.2d 266, 269 (Ind. Ct. App. 2010), *trans. denied*.

[14]     The standard for determining what due process requires in a juvenile proceeding is "fundamental fairness." *S.L.B. v. State*, 434 N.E.2d 155, 156 (Ind. Ct. App. 1982). "The due process clause applies in juvenile proceedings, but a juvenile [court] must respect the informality and flexibility that characterize juvenile proceedings while insuring that such proceedings comport with the fundamental fairness demanded by the due process clause." *In re K.G.*, 808 N.E. 2d 631, 637 (Ind. 2004). *See also J.H. v. State*, 857 N.E. 2d 429, 432 (Ind. Ct. App. 2006) (recognizing due process right to written notice of the claimed violation of his probation that is sufficiently detailed to allow a juvenile to prepare an adequate defense), *trans denied*.

[15]     L.C. relies on *K.A. v State*, 938 N.E.2d 1272 (Ind. Ct. App. 2010), *trans. denied*, and *C.S. v. State*, 817 N.E.2d 1279 (Ind. Ct. App. 2004), for his contention that his due process rights were violated because the State presented no evidence that his behavior warranted a modification to the DOC. However, these cases are distinguishable from the matter at hand.

[16] In *K.A. v. State,* the State requested modification, alleging that K.A. had violated probation by being a runaway. 938 N.E. 2d at 1273. However, at the hearing regarding modification due to the alleged probation violation, the State presented no evidence of the alleged violation and presented only its new placement recommendation. *Id.* In overturning the modification, our court noted "[b]ecause the purpose of the hearing was to determine whether modification was necessary in light of the alleged probation violation, the record indicates that the modification of K.A.'s disposition was predicated on the alleged probation violation. The juvenile court's modification of K.A.'s disposition without any evidence of his alleged probation violation was therefore a violation of due process." *Id.*

[17] In *C.S. v State*, the probation officer filed a petition to revoke probation due to a drug screen alleged to be positive for cocaine taken just five days after being placed on probation. During the hearing regarding the alleged probation violation, the probation officer testified regarding her lack of knowledge of the testing procedures and that she received a report from the drug screen and "'[t]he results stated that [C.S.] tested positive of cocaine." 817 N.E.2d at 1281. No other evidence of the presence of cocaine was presented, and the report that the probation officer received concerning the drug test was not provided. *Id.*

[18] In the instant matter, the hearings held by the trial court on March 13 and March 16, 2018, combined, comport with the "fundamental fairness" required in juvenile delinquency proceedings. At the March 13 hearing, L.C. was present in person and by counsel. His mother was also present. At the March 16

hearing, L.C.'s counsel and his mother were present. Both advocated on his behalf. Here, probation provided evidence of the allegations, L.C. had notice of the allegations of noncompliance with programming, and L.C. had an opportunity to formulate and present a defense. The procedures used in this circumstance were sufficient to provide L.C. with due process.

[19] L.C. additionally argues that his due process rights were violated when he was not present for the March 16, 2018 hearing. We disagree. L.C. was present for the March 13, 2018 hearing, both in person and by counsel. He testified regarding some of his behaviors at Lakeside. At the conclusion of this hearing, the court sent him for an updated psychological evaluation. The court received the updated psychological evaluation and reconvened on March 16, 2018. At this second hearing regarding the same matter, L.C.'s counsel and mother were both present. Mother renewed the objection to L.C.'s placement at DOC. She also stated that she had spoken with the doctor who was currently evaluating L.C. regarding disagreement with medications that L.C. had been on at Lakeside. Counsel for L.C. was present and argued that DOC was not the appropriate location and suggested that another placement be located. No specific alternative location was presented, and counsel for L.C. did not object to his absence at that time. Moreover, L.C. was a flight risk. Under these circumstances, we cannot say that L.C.'s due process rights were violated because he was not present for the March 16, 2018 hearing.

## *Abuse of Discretion*

[20] The juvenile court system is founded on the notion of *parens patriae,* which allows the court to step into the shoes of the parents. *In re K.G.*, 808 N.E.2d at 635. The *parens patriae* doctrine gives a juvenile court the power to further the best interests of the child, which implies a broad discretion unknown in the adult criminal court system. *Id.* at 636. The juvenile court therefore has wide latitude and great flexibility in its dealings with juveniles. *In re M.T.*, 928 N.E.2d at 268. The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will be reversed only if there has been an abuse of that discretion. *M.B. v. State*, 815 N.E.2d 210, 215 (Ind. Ct. App. 2004). We will overturn a dispositional order only if we determine the court "abused its discretion because its conclusion and judgment are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[21] L.C. argues more specifically that the DOC is not the least restrictive placement and, as such, the placement is in violation the requirements of Ind. Code section 31-37-18-6, and therefore an abuse of discretion. L.C. cites *D.P. v. State*, 783 N.E.2d 767 (Ind. Ct. App. 2003), in support. In *D.P. v. State*, we reversed D.P.'s placement in the DOC because D.P. had successfully completed probation, and other means had not been unsuccessful. Here, however, L.C. was not successful in completing his probation, nor was he amenable to treatment.

[22] L.C. also asserts that he was amenable to treatment. However, the record shows otherwise. L.C. was on probation, and placed with his Mother, when he was arrested for battery causing bodily injury as a Class A misdemeanor if committed by an adult, with his Mother as the victim. He had been removed from two separate treatment facilities because he could not comply with treatment. Defense counsel and probation made no alternative suggestions, and the evidence shows that probation had previously engaged in a multi-state search for placement, with many denials due to L.C.'s risk of flight or lack of programming for L.C.'s specific needs. Because previous efforts at rehabilitation had not been successful, the trial court's placement of L.C. in the DOC was not an abuse of discretion.

## Conclusion

[23] The probation department presented sufficient evidence to support a placement modification. L.C. and his counsel were present for the initial portion of the combined modification and review hearing, and L.C.'s counsel and mother were present for the continuation. As such, his due process rights were not violated. Additionally, because prior efforts at rehabilitation were unsuccessful, placement at the DOC was not an abuse of discretion.

[24] Affirmed.


Bailey, J., and Bradford, J., concur.